[Cite as *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 2013-Ohio-1646.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| TAMARA L. FRIEBEL | : | JUDGES: |
|  | : | Hon. Patricia A. Delaney, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-56 |
| VISITING NURSE ASSOCIATION OF | : |  |
| MID OHIO, ET AL | : |  |
|  | : | O P I N I O N |
| Defendant-Appellee | : |  |


CHARACTER OF PROCEEDING:     Civil appeal from the Richland County Court
of Common Pleas Case No. 2011CV0939


JUDGMENT:     Reversed and Remanded


DATE OF JUDGMENT ENTRY:     April 19, 2013


APPEARANCES:


For Plaintiff-Appellant

PAUL FLOWERS
FRANK GALLUCCI
55 Public Square, Suite 2222
Cleveland, OH 44113

For Defendant-Appellee

MELISSA A. BLACK
JOHN C. BARNO
JAMISON S. SPEIDEL
Box 9115
Columbus, OH  43209

[Cite as *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 2013-Ohio-1646.]

*Gwin, J.*

{¶1} Appellant Tamara Friebel appeals from the June 22, 2012 Judgment Entry issued by the Richland County Court of Common Pleas.

FACTS & PROCEDURAL HISTORY

{¶2} As a home health nurse, appellant provided in-home health care services to the clients of appellee, Visiting Nurse Association of Mid-Ohio. Her job duties included visiting homes of geriatric patients to assess their physical condition, reviewing medications, and tending to medical needs. Each morning, appellant received her schedule identifying the patients she needed to visit. She typically visited six to eight patients per day during the week and sometimes visited patients on the weekends, depending on the needs of the patient. Appellant testified her typical day consisted of going from patient home to patient home and she only had occasion to stop at the office when she needed to pick up a form or medical supplies, check her mailbox, or attend meetings. Each nurse saw patients within a specified territory, though adjustments could be made when necessary.

{¶3} Appellant traveled in her personal vehicle to the patient's homes. During the week, appellant subtracted mileage and time for travel to and from home. On the weekends, appellee paid appellant for travel time and mileage from the time she left her home to the time she returned to her home.

{¶4} On Saturday, January 22, 2011, appellant's first patient was a woman she had visited approximately eight times previously. The patient lived on Park Avenue, West, in Ontario, Ohio. Appellant confirmed she was being paid for both travel time and mileage during this trip from the time she left her home to the time she returned to her

home. Appellant's children and two family friends were in the car with appellant because appellant intended to drop them off at the Richland Mall and then continue on to see her patient at the patient's home in Ontario. Appellant testified she planned to take her normal route to the patient's home, Lexington-Springmill Road to Park Avenue West. On her way, she was going to take the second entrance road to the mall off of Lexington-Springmill Road, drop off her passengers, and proceed on the same access road to return southbound on Lexington-Springmill Road. Appellant stated after she dropped off her passengers at the mall, she would have taken Lexington-Springmill Road to Park Avenue West, the street on which her patient's home was located.

{¶5} Appellant left her home in Shelby, Ohio and traveled south on Lexington-Springmill Road. Prior to arriving at the mall entrance, appellant's car was hit from behind while stopped at a traffic light at Fourth Street and Lexington-Springmill Road. Appellant testified she had not yet departed from the route to her patient's house when the vehicle was struck, as she had not yet turned into the mall entrance.

{¶6} Appellant sought the right to participate in the workers' compensation system for a cervical sprain she sustained in the motor vehicle accident. Though appellant states that appellee does not dispute appellant sustained an injury, the record in this case indicates appellee disputes that an injury occurred.

{¶7} On February 11, 2011, appellant's workers' compensation claim was allowed for a sprain of the neck. After an employer appeal, a hearing officer issued an order on March 22, 2011, finding that appellant was a fixed situs employee and did not begin her substantial employment until she arrived at the patient's house and thus was not in the course and scope of her employment at the time of the accident. A staff

hearing officer vacated the district hearing officer's order on May 12, 2011, and the claim was allowed for a cervical sprain.

{¶8}    Appellant filed a complaint in Richland County Common Pleas Court on August 12, 2011, after appellee commenced the proceedings on July 25, 2011. Appellee filed an answer denying the allegations. The Bureau of Workers' Compensation filed an answer stating appellant should be allowed to participate in the fund for allowed conditions only.  The trial court granted summary judgment to appellee on June 22, 2012, finding, as a matter of law, appellant's injury did not arise out of her employment and was not received in the course of her employment because she was on the personal errand of transporting passengers to the mall.

{¶9}    Appellant filed an appeal of the trial court's June 22, 2012 judgment entry granting summary judgment to appellee and raises the following assignment of error on appeal:

{¶10} " AS A MATTER OF LAW, THE TRIAL COURT ERRED BY OVERTURNING THE SOUND DISCRETION OF THE INDUSTRIAL COMMISSION OF OHIO AND GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE, VISITING NURSE ASSOCIATION OF MID OHIO."

*Summary Judgment*

{¶11} Civ. R. 56 states in pertinent part:

"Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that

the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶12}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (1999).

**{¶13}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review

the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

**{¶14}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (1991).

*Workers' Compensation*

**{¶15}** Pursuant to R.C. 4123.54(A), every employee who is injured or contracts an occupational disease in the course of employment is entitled to receive compensation for loss sustained a result of the disease or injury as provided for in the Ohio Revised Code. R.C. 4123.01(C) provides that in order for an employee's injury to be compensable under the workers' compensation fund, the injury must be "received in the course of, and arising out of, the injured employee's employment." The claimant must show the injury was received both in the course of and arising out of the injured employee's employment. *Fisher v. Mayfield*, 49 Ohio St.3d 275, 551 N.E.2d 1271 (1990). However, this rule is to be liberally construed in favor of awarding benefits. *Id.* at 278, 551 N.E.2d 1271.

*"In the Course of"* Employment

**{¶16}** Appellee argues the trial court properly found as a matter of law appellant's injury was not received in the course of her employment with appellee. We disagree. The requirement that an injury be in the course of employment involves the time, place, and circumstances of the injury. *Fisher*, 49 Ohio St.3d 275, 551 N.E.2d 1271. An injured employee does not actually have to be performing his or her duties for the injury to be in the course of employment. *Stair v. Mid-Ohio Home Health Ltd.*, 5th Dist. No. 2010-CA-0114, 2011-Ohio-2351. An employee "must be engaged in a pursuit or undertaking consistent with the contract of hire which is related in some logical manner, or is incidental to, his or her employment." *Id.* at ¶ 32.

**{¶17}** Appellee states appellant was on a personal errand and thus not in the course of employment at the time of her accident because her conduct at the time of the accident involved transporting passengers to the mall. Appellee further argues appellant's act of transporting passengers to the mall took her conduct outside the course of her employment.

**{¶18}** In *Houston v. Liberty Mutual Fire Insurance Company*, an employee working as a merchandiser tending to merchandise displays in various stores went to lunch and Wal-Mart on a personal errand, but had resumed work and was traveling on her original route to a store when she was involved in an accident. 6th Dist. No. L-04-1161, 2005-Ohio-4177. The court held that, "when a frolic and detour is ended and the employee returns to his or her original route, the employee is again within the scope of employment." *Id.* at ¶ 47.

**{¶19}** In *Slack v. Karrington Operating Company*, this court found that while an employee would arguably be within the course of her employment while on a break visiting a park with her boss, she was not in the course of her employment when she stepped away from her boss onto another walkway. 5th Dist. No. 99-COA-01337, 2000 WL 1523285 (Sept. 28, 2000). On the other hand, in *Stair v. Mid Ohio Home Health Ltd.*, we found an employee injured slipping on ice in the parking lot while en route to picking up her paycheck was in the course of employment because she was required by the employer to pick up her paycheck from the office. 5th Dist. No. 2010-CA-0114, 2011-Ohio-2351.

**{¶20}** In this case, appellant's children and two family friends were in the car with appellant because appellant intended to drop them off at the Richland Mall. However, appellant testified she would have traveled the same route to her patient's home whether or not she had been dropping her passengers off at the mall. She testified she had not yet turned into the mall when her vehicle was struck from behind. Once the light turned green, she intended to proceed straight through the intersection on Lexington-Springmill Road and then turn into the mall entrance before returning to Lexington-Springmill Road and continuing on this route to her patient's home.

**{¶21}** These facts present a unique situation in which appellant had dual intentions when she left her home on the morning of Saturday, January 22, 2011. She intended to travel to her patient's home via a certain defined route. She also intended to drop her passengers off at the mall and return to the route to her patient's home. We find it significant that while, at the time of the accident, she had a future intent to divert her vehicle into the mall entrance, she had not yet diverted off the route from her home

to the patient's home. Appellant did not have the opportunity to end any potential "frolic and detour" that might have occurred, as she was not yet in the process of any "frolic and detour" or personal errand when her vehicle was hit from behind. She was still on the path to the patient's home at the time of the accident. Appellant had not detoured from her path to the patient's home and appellee was paying her travel time and mileage during this time. Simply because appellant dually intended to both travel to her patient's home and drop her passengers off at the mall when she left her house does not disqualify appellant from being in the course of employment since the accident occurred prior to appellant's deviation from the route to the patient's house.

{¶22} Accordingly, we find appellant was injured while engaged in specific acts appellee required her to do regularly as part of her weekend employment – traveling to her patient's home. Thus, as a matter of law, appellant's injury was received in the course of her employment with appellee.

*"Arising Out of" Employment*

{¶23} Appellant argues the trial court erred in finding her injury did not arise out of her employment. We agree. To satisfy this prong, there must be a sufficient causal connection between the alleged injury and the employment. *Fisher*, 49 Ohio St.3d 275, 551 N.E.2d 1271. Whether there is sufficient causal connection between an injury and her employment depends on the totality of the facts and circumstances surrounding the accident, including: "(1) the proximity of the scene of the accident to the place of employment; (2) the degree of control the employer had over the scene of the accident; and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Lord v. Daugherty*, 66 Ohio St.2d 441, 423 N.E.2d 96 (1980).

This list of factors is not exhaustive and may continue to evolve, but the list is "illustrative of the factors that need to be considered." *Fisher*, 49 Ohio St.3d at 279, 551 N.E. 2d 1271.

{¶24} Appellee relies on *Gilham v. Cambridge Home Health Care, Inc.* and *Crockett v. HCR Manorcare,* to argue appellant cannot meet the totality of the circumstances test because the accident occurred on a public roadway, the employer did not exercise control over the accident scene, and the employer did not receive a sufficient benefit from appellant's presence at the scene of the accident. 5th Dist. No. 2008CA00211, 2009-Ohio-2842; 4th Dist. No. 03CA2919, 2004-Ohio-3533. The key distinction between appellant in the instant case and the employees in the *Gilham* and *Crockett* cases cited by appellee is that in *Gilham* and *Crockett*, the employees were not paid for travel time or reimbursed for travel expenses. In this case, both parties agree that, on the weekends, appellee paid appellant for travel time and mileage from the time she left her home to the time she returned to her home.

{¶25} Travel was an integral part of appellant's employment as a visiting nurse. Appellee knew appellant used her vehicle to travel to and from job sites and acquiesced in its use. Unlike on the weekdays when appellant was not paid for mileage or travel time to and from her home, on the Saturday when the accident occurred appellant was paid for travel time and mileage from the time she left her home to the time she returned to her home. Appellee waived direct control of appellant's "tools of the trade," such as her automobile. *Hampton v. Trimble*, 101 Ohio App.3d 282, 655 N.E.2d 432 (2d Dist. 1995). An employer's lack of control over an accident scene is not dispositive of causation because "the absence of this one factor [i.e., degree of employer's control

over the accident scene] cannot be considered controlling to deny coverage." *Cossin v. Ohio State Home Servs., Inc.*, 10th Dist. No. 12AP-132, 2012-Ohio-5664, quoting *Griffith v. Miamisburg*, 10th Dist. No. 08AP-557, 2008-Ohio-6611, ¶ 13.

**{¶26}** While appellee had no control over the scene of the accident, appellee reaped the benefits of appellant's travel to the homes of patients as its business centers around nurses traveling to visit patients in their homes. As noted above, appellant was on the route to the patient's home, prior to exiting the route to the patient's home to drop off her passengers at the mall and thus was still in her zone of employment. She had not yet diverted from the route to the patient's home to seek a personal benefit at the time of the accident. Further, the record demonstrates the accident site was only a few miles from the home of the patient.

**{¶27}** The totality of the circumstances shows appellant would not have been present at the scene of the accident if she was not performing her employment duties. Accordingly, we find, as a matter of law, appellant has established the causation prong of *Fisher.*

### *"Coming and Going" Rule*

**{¶28}** "As a general rule, an employee with a fixed place of employment, who is injured while traveling to or from his place of employment, is not entitled to participate in the Workers' Compensation Fund because the requisite causal connection between injury and the employment does not exist." *Ruckman v. Cubby Drilling, Inc.*, 81 Ohio St.3d 117, 119, 689 N.E.2d 917 (1998). When determining whether an employee is a fixed situs employee, the "focus is on whether the employee commences his or her substantial employment duties only after arriving at a specific and identifiable workplace

designated by his employer." *Id.* Further, "where traveling itself is part of the employment, either by virtue of the nature of the occupation or by virtue of the contract of employment, the employment situs is non-fixed, and the coming-and-going rule, is by definition, inapplicable." *Bennett v. Goodremont's, Inc.*, 6th Dist. No. L-08-1193, 2009-Ohio-2920 at ¶ 19.

**{¶29}** Appellee argues the coming and going rule prevents appellant from participating in the workers' compensation fund. We disagree. Appellant testified her typical day consisted of traveling from patient home to patient home and she only had occasion to stop at the office when she needed to pick up a form, pick up medical supplies, check her mailbox, or for meetings. Her work day did not begin and end in one location. In addition, unlike in the *Gilham* case, appellant was compensated for travel time and mileage from the time she left her home until the time she returned to her home. The facts in this case are similar to those in *Stair v. Mid-Ohio Home Health Ltd.*, where the employee traveled to homes to complete household chores and was paid hourly for the chores and travel time between clients. 5th Dist. No. 2010-CA-0114, 2011-Ohio-2351. Appellant's travel to and from the patients' homes was a fundamental and necessary part of her employment duties.

**{¶30}** We conclude as a matter of law appellant was not a fixed situs employee and the coming and going rule does not apply to prevent appellant from participating in the workers' compensation fund.

*Special Hazard Exception*

**{¶31}** Appellant argues the special hazard exception applies in this case if the coming and going rule bars her claim. Analysis of the special hazard exception is only

relevant if appellant is a fixed situs or semi-fixed situs employee. *Ruckman,* 81 Ohio St.3d 117, 689 N.E.2d 917 (1998). Because we found as a matter of law the coming and going rule does not apply and appellant was not a fixed or semi-fixed situs employee, the special hazard exception is not applicable.

*Conclusion*

**{¶32}** We find the trial court erred as a matter of law in determining appellant was not entitled to participate in the workers' compensation fund.

**{¶33}** Appellant's assignment of error is sustained.

**{¶34}** For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County is reversed, and the cause is remanded to the court for further proceedings in consistent with this decision.

By Gwin, J., and

Delaney, P.J., concur;

Wise, J., dissents

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

WSG:clw 0325

*Wise, J., dissenting*

**{¶35}** I respectfully dissent from the majority opinion. The majority finds that appellant was in the course of employment because she had a dual intent at the time she left her house. One intent was to go to her first scheduled appointment of the day. Appellant's other intent was to take her daughter and a friend to the mall, which was en route to her first appointment. The majority analyzes this fact pattern under a frolic and detour theory finding that she had not yet left the route leading to her first job site, as she had not yet turned onto the route entering the mall when the accident occurred.

**{¶36}** I agree with the majority that the facts determine the legal outcome in "course of employment" cases; however, I disagree with the majority's application of the facts in this case. I do not believe "frolic and detour" is the proper legal analysis under these facts. The majority speaks to the dual intent of appellant and applies that concept to the "frolic and detour" analysis. I disagree with this analysis for two reasons. First, I do not find any case law to support the concept of dual intent. I believe that an employee has a purpose which may change during the course of the day's employment, i.e. "frolic and detour". Second, I believe intent or purpose analysis becomes very difficult when trying to determine what is in the mind of the employee. Instead, I believe a strict application of the facts best determines whether the employee was in the course of employment or on a personal errand. In this case, the facts indicate that the employee was headed to the mall to drop off her daughter and her friend. Only after she had dropped off her passengers at the mall was she going to begin her travel in the course of her employment. Therefore, there could be no "frolic and detour" from a course upon which she had not yet set out.

_____
JUDGE JOHN W. WISE

[Cite as *Friebel v. Visiting Nurse Assn. of Mid-Ohio*, 2013-Ohio-1646.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

TAMARA L. FRIEBEL                     :
                                      :
            Plaintiff-Appellant       :
                                      :
                                      :
-vs-                                  :          JUDGMENT ENTRY
                                      :
VISITING NURSE ASSOCIATION OF         :
MID OHIO, ET AL                       :
                                      :
                                      :
            Defendant-Appellee        :          CASE NO. 2012-CA-56


     For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas of Richland County is reversed, and the cause is remanded

to the court for further proceedings in consistent with this decision.  Costs to appellee.


                                      _____
                                      HON. W. SCOTT GWIN


                                      _____
                                      HON. PATRICIA A. DELANEY


                                      _____
                                      HON. JOHN W. WISE